UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAMMY ROSEBROUGH,

      Plaintiff,                              Case No. 2:09-cv-182
                                            JUDGE GREGORY L. FROST
      v.                                    Magistrate Judge E.A. Preston Deavers

BUCKEYE VALLEY
HIGH SCHOOL,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment filed by Defendant Buckeye Valley High School ("Buckeye Valley") (Doc. # 15), a memorandum in opposition filed by Plaintiff, Tammy Rosebrough (Doc. # 21), and a reply memorandum filed by Buckeye Valley (Doc. # 25).  For the reasons set forth below, the Court **GRANTS** Buckeye Valley's motion for summary judgment on all claims.

### I. Background

Tammy Rosebrough was born without a left hand.  In September 2007, Rosebrough applied for a position as a cook at Buckeye Valley North High School.  During this interview, Rosebrough met with the department supervisor, Roger Cope.  Cope told Rosebrough that Buckeye Valley North was in desperate need of bus drivers and asked her if she would be interested in such a position.  Rosebrough called Cope the next day and told him that she was interested in the position.  Cope told her that he had to check with the state to see if there were any restrictions on Rosebrough driving a school bus.

In the meantime, Cope released a memorandum citing Buckeye Valley's need for bus

1

drivers.  Soon after this, Rosebrough called Cope, who informed her that a waiver is required from the Ohio Department of Education before an individual who is missing a limb is able to operate a school bus.  Cope is familiar with this procedure because Buckeye Valley had previously hired three bus drivers who required such a waiver.  Rosebrough received her blank waiver form at the beginning of October 2007 and received approval of the waiver from the Department of Education in January 2008.

Rosebrough trained with Buckeye Valley from January 26 until March 16, 2008.  Rosebrough scheduled a test to obtain her commercial driver's license on March 20, 2008.  Deanna Carper agreed to administer the test.  In order for Carper to administer the test, she had to find a substitute for her route.  The morning before the test, Carper called Rosebrough and informed her that she was unable to find a substitute and would have to reschedule the test.  Rosebrough did not attempt to reschedule.  Instead, Rosebrough took her records from Buckeye Valley and attempted to get licensed in another school district.  She was unable to do so.

On March 11, 2009, Rosebrough filed a complaint against Buckeye Valley.  (Doc. # 1.)  Rosebrough asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and Ohio Revised Code § 4112.02 *et seq*. for disability discrimination and disparate treatment.  (Doc. # 1 ¶¶ 27-64.)  The complaint also asserts a claim of intentional infliction of emotional distress.  (*Id*. at ¶¶ 65-71.)  Buckeye Valley moved for summary judgment.  (Doc. # 15.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

**A. Standard Involved**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35.

**B. Analysis**

Rosebrough asserts three claims under the ADA and the Ohio Revised Code against Buckeye Valley. The first is employment discrimination against an individual with a disability. (Doc. # 1 ¶¶ 27-32, 46-51.) The second is employment discrimination against an individual with a perceived disability. (*Id*. ¶¶ 33-38, 52-57.) The third is disparate treatment, as Rosebrough alleges that Buckeye Valley trained, tested, and hired a non-disabled applicant while failing to

3

test or hire Rosebrough. (Doc. # 21, at 18-19.) Rosebrough also makes a claim of intentional infliction of emotional distress and requests compensatory and punitive damages. (Doc. # 1 ¶¶ 65-71.) Buckeye Valley argues that it is entitled to summary judgment on the employment discrimination claims because Rosebrough does not meet the ADA's definition of "disabled" and because Rosebrough is not qualified to drive a bus because she does not have a commercial driver's license. Buckeye Valley also argues that it is immune from the tort claim and request for punitive damages because it is a political subdivision.

Neither party has argued that an action for handicap discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the ADA. "[B]ecause Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, [this Court] will analyze plaintiff's state and federal discrimination claims . . . solely under the ADA." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 936 (6th Cir. 2000) (noting that Ohio case law seems to support the proposition that the ADA analysis applies to an Ohio claim of disability discrimination).

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* showing of disability-based discrimination under the ADA, a plaintiff must establish:

> 1) that he or she is disabled; 2) is otherwise qualified for the job, with or without "reasonable" accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination, the position remained open or the individual was replaced.

*Leeper v. Verizon Wireless*, No. 2:08-cv-0727, 2009 WL 5062097, at *3-4 (S.D. Ohio Dec. 16,

2009) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (internal citations omitted)).

The ADA defines disability, with respect to an individual, as a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). For purposes of this Opinion and Order, the Court assumes *arguendo* that Rosebrough is considered disabled under the ADA.

Rosebrough asserts that she is a qualified individual under the ADA because, despite missing a hand, she has been driving motor vehicles since she was sixteen years old. Rosebrough acknowledges that she does not have her commercial driver's license. However, she argues that this should not render her disqualified because Buckeye Valley has intentionally prevented her from taking the test. Buckeye Valley does not dispute that Rosebrough can physically drive a bus, but argues that Rosebrough does not constitute a qualified individual because she does not have her commercial driver's license. Buckeye Valley's argument is well taken.

The ADA defines a "qualified" individual as

> [a]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Thus, Rosebrough can be considered "otherwise qualified" to be a bus driver for Buckeye Valley only if she is able to perform the essential functions of that position.

Despite her being capable of driving a bus, there is support for Buckeye Valley's position

5

that Rosebrough's lack of a license defeats her being a qualified individual.  In *Kinneary v. City of New York*, for example, the Second Circuit Court held that a sludge boat captain whose captain's license had expired was not an "otherwise qualified" individual and therefore could not make a claim under the ADA.  601 F.3d 151, 157 (2d Cir. 2010).  Federal regulations subjected Kinneary, a captain employed by the city Department of Environmental Protection, to random drug testing.  *Id*. at 152-53.  During a drug test in 2001, he could not provide a sample within the time limit despite "drinking water like crazy."  *Id*.  The Coast Guard filed a complaint against Kinneary alleging that he refused to submit to the drug test, and his license was suspended.  *Id*. at 154.  The Department of Environmental Protection fired him for not possessing the requisite captain's license.  *Id*. at 155.

      Kinneary filed suit under the ADA claiming that he was fired as a result of paruresis (shy bladder syndrome).  *Id*. at 153.  The Second Circuit held that because Kinneary could not act as a captain without his captain's license, he could not perform an essential function of his job.  *Id*. at 156.  Because Kinneary could not perform an essential function of his job, he was not considered a qualified individual and could not make a claim under the ADA.  *Id*. at 157.

      Similarly, an essential part of being a bus driver is, by definition, driving a bus.  Rosebrough is unable to drive a bus because she does not have her commercial driver's license.  Therefore, Rosebrough cannot perform an essential function of a bus driver and is therefore not a qualified individual under the ADA.

      Rosebrough acknowledges that she does not have her commercial driver's license, but makes three assertions from which she asks this Court to infer that Buckeye Valley prevented her from obtaining her commercial driver's license because of her disability.  First, Rosebrough

claims that Carper had no intention of testing her because Carper would have known that there were no substitutes available on March 20.  (Doc. # 21, at 15.)  Second, Rosebrough argues that the reason Cope refused to allow other bus drivers to split Carper's route on that day was so that Carper would not be available to administer the test.  (*Id*. at 8.)  Third, Rosebrough argues that she did not attempt to reschedule because Carper went on vacation for two weeks and because Rosebrough wanted to get tested somewhere else.  (*Id*.)  The first two assertions are speculative.  These facts merely show a scheduling conflict between Rosebrough and Carper.  The third assertion simply does not speak to any improper motive on the part of Buckeye Valley.  No reasonable juror could infer from these facts that such conduct amounts to disability discrimination, especially when Rosebrough had the opportunity to reschedule her test and elected not to do so.

Rosebrough has not raised a genuine issue of material fact as to whether she is qualified to be a bus driver. Therefore, this Court **GRANTS** summary judgment to Buckeye Valley on the employment discrimination claims constituting claims 1, 2, 4, and 5.

In claims 3 and 6, Rosebrough asserts disparate treatment under the ADA and the Ohio Revised Code.  (Doc. # 1 at 8-11.)  A *prima facie* case of disparate treatment requires a plaintiff to show:

> (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of this disability; and (5) similarly situated non-disabled employees were treated more favorably.

*Watson v. Kraft Foods*, No. 2:06-cv-163, 2007 WL 666620, at *9 (S.D. Ohio Feb. 27, 2007).

*See also Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *Conners v. SpectraSite Commc'ns*, 465 F. Supp. 2d 834, 854 (S.D Ohio 2006).

Because a *prima facie* showing of disparate treatment requires a plaintiff to show that she is qualified for the position, and this Court has already found that Rosebrough has not raised a genuine issue of material fact as to her failure to constitute a qualified individual in the statutory sense, this Court **GRANTS** summary judgment to Buckeye Valley on claims 3 and 6 for disparate treatment. *See Ramsey v. Hamilton County Sheriff's Dep't*, No.1:05-cv-116, 2006 WL 1207984, at *3 (S.D. Ohio May 3, 2006) (holding that a plaintiff must establish that she is a qualified individual under a disparate treatment claim). *Cf. Daniel v. Rutherford County*, No. 3:08-00678, 2010 WL 56082, at *6 (M.D. Tenn. Jan. 5, 2010) (granting defendant employer's motion for summary judgment on employment disparate treatment claim when plaintiff employee did not raise an issue of fact as to whether he was qualified for a position); *Luckiewicz v. Potter*, 670 F. Supp. 2d 400, 407-410 (E.D. Pa. 2009) (same). Moreover, the Court notes that many of the asserted delays that Rosebrough encountered were either self-inflicted due to her own errors or arose from third-party action over which Buckeye Valley could exercise no control.

Rosebrough's final claim is that Buckeye Valley intentionally caused her emotional distress. Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983). The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and

8

>outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' "

*Williams v. York Int'l Corp.*, 63 F. App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)).  Ohio law also provides for liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' "  *Torres v. White*, 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)).

Buckeye Valley moves for summary judgment on this claim, arguing that it could not have intended emotional distress because it was Cope, an employee of Buckeye Valley, who encouraged Rosebrough to become a bus driver in the first place.  Without having to consider the remaining prongs of this mandated inquiry, the Court finds that the second prong of the prima facie case proves dispositive.  Plaintiff has simply failed to present facts indicating conduct that a reasonable person could conclude is " 'beyond all possible bounds of decency.' "  *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 299 (6th Cir. 2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard (quoting *Yeager*, 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 F. App'x at 756-57 (same).  Furthermore, there cannot be a genuine issue of material fact with respect to "outrageous" conduct by Buckeye Valley in light of the fact that this Court found that Rosebrough failed to make out a *prima facie* claim of disability discrimination.  *See Badri v. Huron Hosp.*, 691 F.

9

Supp. 2d 744, 771 (N.D. Ohio 2010) ("For the reasons that Plaintiff cannot prove his claims of disability discrimination, his claim for intentional infliction of emotional distress would similarly fail." (citing *Hillman v. Safeco Ins. Co. of Am.*, 190 F. Supp. 2d 1029, 1039 (N.D. Ohio 2002)). Accordingly, this Court **GRANTS** summary judgment to Buckeye Valley on claim 7 and finds it unnecessary to consider Buckeye Valley's moot immunity argument.

### III. Conclusion

For the foregoing reasons, this Court **GRANTS** Buckeye Valley's motion for summary judgment. (Doc. # 15.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE