UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TAMMY ROSEBROUGH,**

   Plaintiff,        Case No. 2:09-cv-182
               JUDGE GREGORY L. FROST
   v.            Magistrate Judge E.A. Preston Deavers

**BUCKEYE VALLEY**
**HIGH SCHOOL,**

   Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of a supplemental motion for summary judgment (ECF No. 34) filed by Defendant, Buckeye Valley High School ("Buckeye Valley"), a memorandum in opposition (ECF No. 36) filed by Plaintiff, Tammy Rosebrough, and a reply memorandum (ECF No. 37) filed by Buckeye Valley. For the reasons set forth below, the Court **GRANTS** Buckeye Valley's supplemental motion for summary judgment on all claims.

### I. Background

The Sixth Circuit Court of Appeals has described the background facts of this case as follows:

> Tammy Rosebrough was born without a left hand. In September 2007, Rosebrough applied for a cook's position at Buckeye Valley North High School. Rosebrough interviewed with department supervisor Rodger Cope, who told her the school was in desperate need of bus drivers and asked if she would be interested in that position. Cope mentioned he would need to check with the State to see if there were any restrictions that would prevent Rosebrough from driving a school bus. Rosebrough said she wanted to speak with her family, then called the next day to say she was interested in the position. Cope told her he was still waiting to hear back from the State about the restriction issue. In the meantime, Cope released a memorandum to employees citing the school's need for bus drivers.
> Rosebrough later called Cope to ask "what was the hold up," and Cope said

1

again he would contact the State.  A few days later, on October 3 or 4, Cope called Rosebrough to inform her that a waiver is required from the Ohio Department of Education before an individual who is missing a limb is allowed to operate a school bus and told her to come to the office to pick up the waiver forms.  Rosebrough received approval of the waiver from the Department of Education several weeks later on January 23, 2008.  The State rejected Rosebrough's first two waiver submissions because the first waiver's medical evaluation was completed by a physical therapist, instead of the required orthopedic surgeon or physiatrist, and the second waiver was not filled out completely. Rosebrough testified she relied on Cope's instructions and "filled out what [Cope] told me to fill out."

One or two days before Rosebrough received her waiver, Sandy Presley, a Buckeye Valley bus driver trainer, contacted Rosebrough to schedule her training, which began soon thereafter with another trainer, Deanna Carper.  On February 15, Rosebrough met with Cope to discuss some issues she was having with her training.  Relevant to this case, Rosebrough complained that Presley made discriminatory comments to her about her disability on two separate occasions.  On February 5, Presley said Rosebrough "was going to need a lot more [training] hours . . . because of [her] arm" than another trainee who "knew the bus because he worked on cars and he was a race car driver."  On February 9, in front of Carper and the other trainee, Presley told Rosebrough she "won't be able to drive bus 4 or 11 . . . because of [her] hand" since the doors on those buses are difficult to open. Presley denies making statements referencing Rosebrough's disability.  Cope told Rosebrough he would speak with Presley about the comments.

Cope called Rosebrough for a follow-up meeting in his office where he said Carper and Presley told him Rosebrough was speeding, braking too fast, and not listening to instructions.  Rosebrough testified Cope said "it was his trainer's responsibility to make sure that I knew what I was doing and that it was his job to fire me if I wasn't going to do the proper job."  She testified Cope said she "had become high maintenance," slammed his fist down on the desk, and said "[t]he parents at Buckeye Valley will not be happy with you as a driver."  Rosebrough believed Cope meant the parents would not want Rosebrough because she had a hand missing. On February 19, Rosebrough and her husband met with the superintendent, John Schiller, who said he and Cope would discuss the issue.  When Rosebrough did not hear anything from Schiller for several days, she called him and he apologized for not getting back with her and said "they would be more than happy to have [her] as a driver at Buckeye Valley."

After Rosebrough resumed her training, Carper suggested she contact the State to schedule her commercial driver's license ("CDL") certification test which required Rosebrough to attend with a trainer and a school bus.  Carper told Rosebrough she could come any day or time, so Rosebrough scheduled her test for March 20.  On the morning of March 19, Carper called Rosebrough to say she could

2

not attend the test because Cope had refused to let other bus drivers split Carper's bus route and she was unable to get a substitute. Rosebrough cancelled the test with the State and did not ask the State or Carper to reschedule because she "believe[d] there would never be a substitute driver" available to allow a trainer to take her to get her test "after everything they had done to me."

After canceling her test with the State, Rosebrough called Superintendent Schiller and requested her paperwork so she could finish her training and obtain her CDL elsewhere. Over the next several months, Rosebrough contacted several other testing centers and school districts but learned she could only be trained by the school district that ultimately hired her. Rosebrough never contacted Buckeye Valley again to return and finish her training.

On March 11, 2009, Rosebrough filed suit against Buckeye Valley asserting violations of the ADA and the Ohio Revised Code, § 4112.02 *et seq.*, for discrimination due to a disability, a perceived disability, and disparate treatment. She also alleged intentional infliction of emotional distress. In 2010, Buckeye Valley moved for summary judgment asserting Rosebrough could not establish a prima facie case on any of her claims, and Buckeye Valley was entitled to political subdivision immunity on her tort claim and was not liable for punitive damages as a matter of law. Finding that Rosebrough was not qualified to be a bus driver because she did not have a CDL, the district court granted summary judgment to Buckeye Valley on all claims. Rosebrough timely appealed.

*Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 429-30 (6th Cir. 2012).

On appeal, the Sixth Circuit reversed this Court's grant of summary judgment. The court of appeals predicated its reversal on the fact that Rosebrough was asserting that she was a "bus driver trainee" and that, as such, this Court had erred in concluding that she had failed to demonstrate that she was otherwise qualified for the position of bus driver. In reaching this conclusion, the Sixth Circuit noted that "Rosebrough used the phrase 'bus driver trainee' for the first time on appeal." *Id.* at 432 n.3. Because Rosebrough had argued to this Court that Buckeye Valley discriminated against her during her training period, however, the appellate court regarded Rosebrough's argument as properly before it. The Sixth Circuit remanded with instructions for this Court "to determine in the first instance whether Rosebrough has shown

3

genuine issues of material fact on the remaining prima facie elements" of her discrimination claims and to consider "the remaining elements of her emotional distress claim." *Id.* at 433, 434.

Following issuance of the mandate, this Court held a telephone status conference on September 13, 2012. As a result of discussions held with counsel during that conference, the Court set a supplemental summary judgment schedule. (ECF No. 33.) Buckeye Valley subsequently filed a supplemental motion for summary judgment in accordance with that schedule. (ECF No. 34.) The parties have completed briefing on the supplemental motion, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

4

verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

Rosebrough asserts against Buckeye Valley three claims under the ADA and three corresponding claims under the Ohio Revised Code. In claims 1 and 4, she asserts employment discrimination against an individual with a disability. (ECF No. 1 ¶¶ 27-32, 46-51.) In claims 2 and 5, she asserts employment discrimination against an individual with a perceived disability. (*Id.* ¶¶ 33-38, 52-57.) In claims 3 and 6, she asserts disparate treatment. (*Id.* ¶¶ 39-45, 58-64.) Rosebrough also asserts in claim 7 intentional infliction of emotional distress. (*Id.* ¶¶ 65-71.) This Court shall address each claim in turn.

In claim 1, Rosebrough asserts discrimination under the ADA, while in claim 4, she asserts discrimination under Ohio law. As before, as well as on appeal, neither party argues here that an action for handicap discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the ADA. "[B]ecause Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, [this Court] will analyze plaintiff's state and federal discrimination claims . . . solely under the ADA." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000) (noting that Ohio case law seems to support the proposition that the ADA analysis applies

to an Ohio claim of disability discrimination). The Sixth Circuit employed this analytic approach in this litigation. *Rosebrough*, 690 F.3d at 431.

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* showing of disability-based discrimination under the ADA, a plaintiff must establish:

> 1) that he or she is disabled; 2) is otherwise qualified for the job, with or without "reasonable" accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of his or her disability; and 5) after rejection or termination, the position remained open or the individual was replaced.

*Leeper v. Verizon Wireless*, No. 2:08-cv-0727, 2009 WL 5062097, at *3-4 (S.D. Ohio Dec. 16, 2009) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (internal citations omitted)).

The ADA defines disability, with respect to an individual, as a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). Buckeye Valley argues that it is entitled to summary judgment on Rosebrough's first and fourth discrimination claims because she does not meet the ADA's definition of "disabled." For purposes of this Opinion and Order, the Court again assumes *arguendo* that Rosebrough is considered disabled under the ADA.

Next in the analytic chain is whether Rosebrough is a qualified individual under the ADA. That statutory scheme defines a "qualified" individual as

> [a]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's

6

>judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).  Thus, Rosebrough can be considered "otherwise qualified" to be a bus driver trainee only if she is able to perform the essential functions of that position.  It is not necessary to present extended discussion on whether Rosebrough satisfies the "otherwise qualified" element of her discrimination claims.  The Sixth Circuit's remand left only the other *prima facie* elements for this Court to address on remand.  *Rosebrough*, 690 F.3d at 433.

Buckeye Valley targets several of these remaining elements.  It argues that Rosebrough cannot show that she suffered an adverse employment decision as a bus driver trainee when Cope actually recruited Rosebrough to become a bus driver (and therefore implicitly a bus driver trainee) and when Buckeye Valley proceeded to train her so that she would be ready for her CDL certification test.

Rosebrough offers little in the way of a specific substantive response in her memorandum in opposition.  The entirety of the section in her briefing that addresses whether she suffered an adverse action reads as follows:

>The Plaintiff was hired as an employee without wages, provisionally subject to being issued a CDL.  (Cope Depo. pp. 45)  Plaintiff was not hired for wages by the Defendant because she had not been issued a CDL.  The only way Plaintiff could get certification and hired for wages by the Defendant was to take and pass the CDL test with the Defendant's approval and at Defendant's convenience.  Defendant interfered with that process.

(ECF No 36, at PAGEID # 1180.)  This briefing does little to aid the Court in discerning precisely what evidence of interference Rosebrough offers.

To the extent that Rosebrough can be said to raise by implicit incorporation the following events in connection with her claims, the Court finds that Rosebrough has failed to

present a genuine issue of material fact that prevents summary judgment.  As discussed below, the delay in beginning her training was largely self-inflicted and partially the result of third-party action.  Any delay in completing the transition from trainee to driver was the result of a neutral scheduling conflict coupled with Rosebrough's election to forego rescheduling.  Rosebrough's subjective belief that she would never be able to reschedule her certification test is neither evidence of discrimination nor a fact creating an inference that any such effort if it had been undertaken would indeed have proven futile.  Equally unsuccessful at precluding summary judgment is the mere existence of errors in records kept by Carper.  Rosebrough characterizes these errors as evidence that Carper assumed Rosebrough would fail the certification test.  Such pure speculation does not amount to evidence.  Moreover, the errors present no adverse effect; Rosebrough was trained and was ready to take the certification test.  This last rationale also informs the alleged stray comments by individuals such as Presley.  If these comments were made, there is not even an inference that Rosebrough was required to undertake additional training beyond the training all trainees undertake based on any real or perceived disability.  She may have had more training time, but this was as a result of her lack of knowledge in comparison to the race car driver/mechanic trainee.

   No reasonable juror could infer from these facts, even construed in Rosebrough's favor, that Buckeye Valley engaged in conduct amounting to disability discrimination.  As Buckeye Valley correctly notes in its reply memorandum, Rosebrough has failed to point to a cause and effect in which any action by Buckeye Valley could reasonably be construed as discriminating against her.  She has also failed to present evidence calling into question the scheduling conflict that precluded administration of her certification test.  Rather, Buckeye Valley asked

Rosebrough to become a trainee, trained her, and was prepared to engage in the certification test that would transition her from a trainee to a driver as soon as it could be conducted. Buckeye Valley is therefore entitled to summary judgment on the discrimination claims constituting claims 1 and 4.

This same rationale informs the disposition of claims 2 and 5. Assuming *arguendo* that Rosebrough was perceived as having a disability, there is no evidence that Buckeye Valley discriminated against her as a bus driver trainee as a result of that perception. Buckeye Valley is thus entitled to summary judgment on both claims 2 and 5.

In claims 3 and 6, Rosebrough asserts disparate treatment under the ADA and the Ohio Revised Code. (ECF No. 1 ¶¶ 39-45, 58-64.) A *prima facie* case of disparate treatment requires a plaintiff to show:

> (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of this disability; and (5) similarly situated non-disabled employees were treated more favorably.

*Watson v. Kraft Foods*, No. 2:06-cv-163, 2007 WL 666620, at *9 (S.D. Ohio Feb. 27, 2007). *See also Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *Conners v. SpectraSite Commc'ns*, 465 F. Supp. 2d 834, 854 (S.D Ohio 2006).

Buckeye Valley moves for summary judgment on the grounds that Rosebrough cannot show that she was treated differently than other trainees. The crux of Rosebrough's argument is that it took Buckeye Valley seven months to train her and that she was subjected to multiple processes not required of other trainees. But as this Court previously stated, "many of the asserted delays that Rosebrough encountered were either self-inflicted due to her own errors or

9

arose from third-party action over which Buckeye Valley could exercise no control."

*Rosebrough*, 2010 WL 3036862, at *5.

The existence of this prior conclusion is perhaps somewhat confusing given the court of appeals' reversal. The Sixth Circuit stated:

> The district court assumed without deciding that Rosebrough was disabled under the ADA but determined that she failed to show the second element because she lacked a CDL and thus was not "otherwise qualified" for the position. The court granted summary judgment to Buckeye Valley on all claims on this *one* basis. The district court did not reach the last three elements of the prima facie case.

*Rosebrough*, 690 F.3d at 431 (emphasis added). In previously entering summary judgment for Buckeye Valley on claims 3 and 6, however, this Court set forth *two* reasons: one, that Rosebrough had not raised a genuine issue of material fact over her failure to constitute a qualified individual, and two, that Buckeye Valley was not behind the conduct about which Rosebrough complains. The Sixth Circuit addressed only the first ground for summary judgment and stated that "[t]he district court did not address any prima facie elements of Rosebrough's six discrimination claims except for the 'otherwise qualified' element . . . ." *Rosebrough*, 690 F.3d at 433. In making this statement, the appellate court read out of this Court's prior decision the dispositive recognition of Rosebrough's self-inflicted harm and third-party action over which Buckeye Valley had no control or responsibility. This narrow reading is perhaps understandable even if technically incorrect given this Court's prior phrasing; the court of appeals appears to have treated the second reason as dicta and not as addressing in any way the remaining elements.

Regardless, the adverse action prong again proves dispositive today. Rosebrough complains that she was treated differently than other trainees and points to the delay and processes she endured. But it was the Ohio Department of Education, not Buckeye Valley, that

10

took four months to issue the requisite waiver that enabled Rosebrough to proceed toward her career goal.  Rosebrough herself was partially responsible for this delay because she had failed to complete the application for the waiver properly.  Although she had been informed that only certain types of medical providers could conduct her medical examination, Rosebrough went to a physical therapist for her exam, a category of provider not on the list.  This led to the rejection of her application by the Ohio Department of Education.  Even after Rosebrough subsequently obtained a proper examination, she failed to provide a fully complete application.  The Ohio Department of Education again denied issuance of the waiver through no fault or involvement of Buckeye Valley.  Despite the lack of a waiver, Buckeye Valley permitted Rosebrough to attend pre-service training and had contacted her to schedule her training in advance of Rosebrough receiving the waiver.

  This same lack of action on the part of Buckeye Valley is reflected in the fact that Rosebrough had to take her tuberculosis test multiple times (due to weather issues) and in the fact that she had to be fingerprinted twice (because the first set of prints lacked clarity).  In neither example is there attribution to Buckeye Valley.

  Approximately eight weeks after receiving her waiver, Rosebrough was scheduled to take the test that would enable her to move from a bus driver trainee to a bus driver.  The evidence then indicates that the test had to be rescheduled because, as a result of a shortage of bus drivers, there was no one to administer Rosebrough's test on its initial date.  Rosebrough then wanted to get tested elsewhere, and she never attempted to reschedule her test.

  None of this presents facts upon which a reasonable jury could impose liability on Buckeye Valley.  Rosebrough and the Ohio Department of Education were responsible for the

11

delays in her training, and any extra hoops that Rosebrough had to jump through were as a result of her own inattention to following instructions. Moreover, to the extent that completing the test can be regarded as part of being a trainee as opposed to morphing into qualifying for being a bus driver, there is no evidence of discrimination underlying the delayed test. There is in fact evidence of Rosebrough's election for inaction followed by litigation. Buckeye Valley is again entitled to summary judgment on claims 3 and 6.

Rosebrough's final claim is that Buckeye Valley intentionally caused her emotional distress. Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983). The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' "

*Williams v. York Int'l Corp.*, 63 F. App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)). Ohio law also provides for liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Torres v. White*, 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6

12

Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)).

In previously granting summary judgment for Buckeye Valley on this claim, this Court explained:

> Without having to consider the remaining prongs of this mandated inquiry, the Court finds that the second prong of the prima facie case proves dispositive. Plaintiff has simply failed to present facts indicating conduct that a reasonable person could conclude is " 'beyond all possible bounds of decency.' " *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 299 (6th Cir. 2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard (quoting *Yeager*, 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 F. App'x at 756-57 (same). Furthermore, there cannot be a genuine issue of material fact with respect to "outrageous" conduct by Buckeye Valley in light of the fact that this Court found that Rosebrough failed to make out a *prima facie* claim of disability discrimination. *See Badri v. Huron Hosp.*, 691 F. Supp. 2d 744, 771 (N.D. Ohio 2010) ("For the reasons that Plaintiff cannot prove his claims of disability discrimination, his claim for intentional infliction of emotional distress would similarly fail." (citing *Hillman v. Safeco Ins. Co. of Am.*, 190 F. Supp. 2d 1029, 1039 (N.D. Ohio 2002)). Accordingly, this Court **GRANTS** summary judgment to Buckeye Valley on claim 7 and finds it unnecessary to consider Buckeye Valley's moot immunity argument.

*Rosebrough v. Buckeye Valley High Sch.*, No. 2:09-cv-182, 2010 WL 3036862, at *6 (S.D. Ohio Aug. 2, 2010). Thus, this Court granted summary judgment for *two* wholly distinct reasons: one, that the conduct was not outrageous, and two, that Rosebrough's underlying disability discrimination failed. Unlike in regard to claims 3 and 6, the foregoing language this Court used previously cannot be regarded as dicta.

Despite the two distinct reasons supporting this Court's decision, the Sixth Circuit stated on appeal that "[a]s with Rosebrough's discrimination claims, the district court granted Buckeye Valley summary judgment on her emotional distress claim based solely on its analysis of the 'otherwise qualified' prong." *Rosebrough*, 690 F.3d at 433. The court of appeals also reversed

13

on this claim with the instruction that this Court should consider the remaining elements and any asserted defenses.

The briefing does not provide a balanced discussion of these elements. Although Buckeye Valley addresses claim 7 in its memorandum in support of its motion for summary judgment (ECF No. 34, at PAGEID # 1140-41), Rosebrough in her memorandum in opposition only notes that she asserted the claim (ECF No. 36, at PAGEID # 1166) and does not present any substantive argument on claim 7. This refusal by Rosebrough to address the substance of the claim and the relevant portion of Buckeye Valley's motion amounts to abandonment of claim 7. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.,* 65 F. App'x 19, 24–25 (6th Cir. 2003) (stating that a plaintiff's failure to brief a claim in the district court is an abandonment of the claim); *Campbell v. Nally*, No. 2:10-cv-1129, 2012 WL 4513722, at *12 (S.D. Ohio Oct. 1, 2012) (holding that a perfunctory statement in a summary judgment memorandum in opposition that "material facts remain in dispute" in regard to claims amounts to abandonment of those claims); *Murphy v. Ohio State Univ.*, No. 2:11-cv-238, 2012 WL 4499027, at *4 (S.D. Ohio Sept. 28, 2012) (explaining that a plaintiff's failure to present actual argument on a claim in a memorandum in opposition constitutes abandonment of that claim); *Colston v. Cleveland Pub. Library*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff

14

"did not respond or even mention [the] claim in her oppositions to Defendants' motions for summary judgment"); *Thomas v. Starbucks Corp.*, No. 3:10–1158, 2012 WL 1900919, at *4 (M.D. Tenn. May 24, 2012) (holding that a district court can decline to consider a claim's merits when a plaintiff fails to address the claim in a summary judgment response); *EEOC v. Home Depot USA*, No. 4:07-cv-143, 2009 WL 395835, at *17 (N.D. Ohio Feb. 17, 2009) ("When a plaintiff asserts a claim in a complaint but then fails to delineate that claim in her brief in opposition to summary judgment, that claim is deemed abandoned."); *Anglers of the Au Sable v. United States Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

Even proceeding in the alternative to deem claim 7 not abandoned, however, this Court must conclude that Buckeye Valley is entitled to summary judgment on the merits. Two points warrant mentioning in regard to the merits.

First, the court of appeals' reversal on claim 7 is confusing because the Sixth Circuit's characterization of the prior summary judgment decision ignores the existence of an alternative reason that this Court had offered for its decision on this claim. This Court had concluded that Rosebrough has failed to present facts indicating conduct that a reasonable person could conclude is beyond all possible bounds of decency, and only then–employing the transitional term "furthermore"–the Court went on to present the second reason that the court of appeals actually addressed. *Rosebrough*, 2010 WL 3036862, at *6.

Second, nothing in the Sixth Circuit's decision contravenes the prior conclusion of this Court in regard to whether the purported conduct here was sufficiently outrageous. The court of

15

appeals in fact noted in its decision that "[i]t is certainly far from clear on this record that Rosebrough could show a genuine issue of material fact regarding whether Buckeye Valley's conduct was extreme and outrageous." *Id.* at 433-34.  This Court agrees both with this latter proposition and Buckeye Valley's re-assertion that the alleged conduct involved here does not rise to the level of exceeding all possible bounds of decency.  Consequently, the Court again enters summary judgment for Buckeye Valley on claim 7.

### III. Conclusion

For the foregoing reasons, this Court **GRANTS** Buckeye Valley's supplemental motion for summary judgment.  (ECF No. 34.)  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE